IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-3147-WJM-NYW

JANET THOMPSON and
DEBORAH SOLIS

    Plaintiffs,

v.

ADAMS COUNTY SCHOOL DISTRICT 50, a/k/a Westminster Public Schools,

    Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiffs Janet Thompson and Deborah Solis (together, "Plaintiffs") bring this suit against Westminster Public Schools ("Defendant"), alleging violation of the Americans with Disabilities Act (ADA) and constructive discharge. (*See* ECF No. 22.) Defendant moves to dismiss Plaintiffs' constructive discharge claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendant's Motion is granted.

## I. BACKGROUND

For purposes of this Motion the Court will take the following factual allegations, taken from Plaintiffs' Amended Complaint, to be true:

Plaintiff Thompson was a bus driver with Westminster Public Schools from 1997 until 2015. (ECF No. 22 at 3, ¶¶ 9, 11.) Plaintiff Solis was a bus monitor from 1996 until 2015. (*Id.* ¶¶ 10,11.) Plaintiffs worked together on the same bus from 2013 until 2015. Plaintiff Thompson was diagnosed with breast cancer in 2012 and was placed

on medication that caused frequent nausea and vomiting.  (*Id.* at 3–4, ¶¶ 3, 18.)  Plaintiff Solis was diagnosed with neurofibromatosis at the age of ten.  Her illness requires her to use a permanent urostomy appliance, which needed to be emptied four to six times a day—if she is unable to empty the appliance, it will leak, soiling her clothes.  (*Id.* at 5, ¶ 30.)  Thus, both Plaintiffs needed frequent access to a restroom facility.

Plaintiffs were assigned to Route 22, which services students with special needs in two school districts.  (*Id.* at 7, ¶¶ 41–43.)  Therefore, Plaintiffs' route covered a longer distance than the District's other bus routes.  (*Id.*)  "[B]us drivers and school bus monitors were not allowed to use the restrooms in any of the schools they serviced."  (*Id.* ¶ 39.)  Thus, Plaintiffs' conditions required them to deviate from their bus route to use other public restrooms, such as in convenience stores.  According to Plaintiffs, Defendant was aware that the "Plaintiffs experienced significant physical disabilities which caused them to take frequent off route restroom breaks."  (*Id.* at 16, ¶ 113.)  Between 2001 and 2010, Plaintiffs were each rated as proficient or higher in every category of their annual performance reviews.  (*Id.* at 7–8, ¶¶ 46–50.)

During the 2015–2016 school year, Plaintiffs were scheduled to work Monday through Friday 5:30 a.m. until 8:45 a.m. and 1:45 p.m. until 5:00 p.m., except on Wednesdays when the afternoon shift would be from 12:30 p.m. until 3:15 p.m.  (*Id.* at 8, ¶¶ 52–53.)  On Wednesdays, Plaintiffs were expected to arrive at Legacy High School in Adams County by 12:15 p.m.  (*Id.* at 8, ¶ 55.)  They approached their supervisor and asked to alter their schedules to begin at 12:00 p.m. on Wednesday

2

afternoon instead of 12:30 p.m., which would enable them to arrive at Legacy High School by 12:15 p.m., as required. (*Id.* at 9, ¶ 56.)

Shortly after they made this request, Defendant began to scrutinize Plaintiffs' performance with a GPS tracker to identify their location. (*Id.* ¶ 58.) On August 25, 2015, Defendant learned that Plaintiffs had stopped at a 7-Eleven convenience store from 7:58 a.m. until 8:20 a.m. (*Id.* ¶ 59.) Defendant interpreted this stop as evidence that Plaintiffs were wasting time. (*Id.*) However, Plaintiffs claim that they stopped at the 7-Eleven to use the restroom, because Plaintiff Thompson needed to vomit and Plaintiff Solis needed to empty her urostomy appliance. (*Id.* ¶ 60.) After the stop, Plaintiffs completed their route, reported back to the garage, and clocked out at 8:45 a.m. (*Id.* ¶ 61.) On September 2, 2015, an employee of the Defendant tailed the Plaintiffs to a 7-Eleven convenience store and stopped at the location from 8:05 a.m. until 8:22 a.m. (*Id.* ¶ 62.) Again, Plaintiffs reported back to the transportation garage and clocked out at 8:45 a.m. (*Id.* ¶ 63.)

On September 11, 2015, the Plaintiffs were called into a meeting with Defendant's Human Resources Director Leday to discuss the "falsification of [their] time sheets." (*Id.* at 10, ¶ 64, 66.) During this meeting, both Defendants were placed on investigatory leave with pay. (*Id.*) At this meeting, Plaintiff Thompson provided a doctor's note to Director Leday explaining her medical condition and need for frequent restroom trips. (*Id.* at 65.) At this meeting, Director Leday also asked Plaintiff Solis to provide him with a doctor's note regarding her health condition. (*Id.* ¶ 68.) She attempted to provide him with one on September 17, 2015, but he refused to read it.

3

(*Id*. ¶ 69.)  At the September 11, 2015 meeting, Plaintiffs were provided with a letter from Leday saying they were accused of falsifying their official time sheet records and leaving their duty assignment without authorization.  (*Id.*¶ 67.)

In 2015, Plaintiffs were represented by the Westminster Education Association ("Union") and its President, Rosie Jaramillo.  (*Id.* ¶ 70.)  Jaramillo asked Leday to drop the charges against Plaintiffs since the Plaintiffs were able to provide doctor's notes explaining why they needed to use the restroom off route.  (*Id.* at 11, ¶ 71.)  In the same e-mail, Jaramillo notified Leday of past practices of other bus drivers of stopping off route to go to the restroom during their bus run, including a current supervisor who used to park the bus by her house to go to the restroom.  (*Id.* ¶ 72.)

On September 17, 2015, Leday had separate meetings with each Plaintiff and Jaramillo was present for both meetings.  (*Id.* ¶ 74.)  In his meeting with Solis, Leday showed them video footage of Plaintiffs driving around the 7-Eleven parking lot and purchasing items from the store.  (*Id*. ¶ 75.)  During this meeting, he told Plaintiff Solis that she could either resign or be terminated from her position.  (*Id.* ¶ 76.)  Shortly after this meeting, Plaintiff Solis tendered her letter of resignation and it was accepted by Defendant on September 22, 2015.  (*Id.* ¶ 78.)

During his meeting with Plaintiff Thompson and Jaramillo, Leday told Thompson that an investigation had been conducted and told her about the video.  (*Id.* at 12, ¶ 79.)  Plaintiff Thompson explained that she and Plaintiff Solis had to stop to use the restroom and that sometimes they purchased items because they felt obligated to do so. (*Id.*, ¶ 80.)  As with Plaintiff Solis, during this meeting, Leday told Plaintiff Thompson

that she could either resign or be terminated from her position, and specifically told her that if she wanted unemployment benefits, she should resign. (*Id.* ¶¶ 81–82.) Shortly after this meeting, Plaintiff Thompson tendered her letter of resignation and it was accepted by Defendant on September 22, 2015.

Plaintiffs seek relief for Defendant's alleged violation of the ADA and constructive discharge.

## II. Legal Standard

A motion under Rule 12(b)(1) is a request to dismiss a claim for lack of subject matter jurisdiction. A plaintiff bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Dismissal of a complaint under Rule 12(b)(1) is proper when the Court lacks subject matter jurisdiction over a claim for relief. *See SBM Site Services, LLC v. Garrett*, 2012 WL 628619, at *1 (D. Colo. Feb. 27, 2012).

When a court's subject matter jurisdiction is challenged, the court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. United States*, 342 F.3d 1282, 1296 (10th Cir. 2003) ("when a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts'" (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995))); *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt*, 46 F.3d at 1003.

Only where the jurisdictional question is intertwined with the merits (not present

here) is conversion of a Rule 12(b)(1) motion into a motion for summary judgment under Rule 56, appropriate. *Id*.; WJM Revised Practice Standards III.D.3.

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

Defendants move to dismiss Plaintiffs' constructive discharge claim on two grounds. First, Defendant argues that Plaintiffs' constructive discharge claim is not a recognized cause of action in Colorado. (ECF No. 24 at 2.) Second, and alternatively, Defendant contends that even if the Court construes Plaintiffs' constructive discharge claim as a wrongful discharge claim, such claims lie in tort and are barred by the

Colorado Government Immunities Act ("CGIA"). (*Id.*)

Defendant first argues that "[b]ecause constructive discharge is not a recognized cause of action, but instead, a theory that Plaintiffs may rely upon to prove an adverse employment action in their disability discrimination claim, their claim fails as a matter of law." (ECF No. 24 at 4.) Plaintiffs respond that "[t]here are numerous instances where plaintiffs have been allowed to plead independent constructive discharge claims that were not simply underlying theories used to prove up discrimination claims." (ECF No. 25 at 7.) Plaintiffs point to three cases to support this contention. (*Id.*) However, in these cases the alleged constructive discharge occurred as a result of breach of contract and included an underlying breach of contract claim. Here, Plaintiffs do not raise a breach of contract claim, but instead they assert a freestanding constructive discharge claim based on alleged disability discrimination. (*Id.*)

In this Circuit, the doctrine of constructive discharge refers to situations where "a reasonable person [] would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Narotzky v. Natrona Cnty. Mem. Hosp.*, 610 F.3d 558, 565 (10th Cir. 2010). The Tenth Circuit has held that requiring an employee to choose between resignation and termination may be a constructive discharge only where the employee's decision is involuntary. *Exum v. Olympic Committee*, 389 F.3d 1130, 1135 (10th Cir. 2004). If the requisite elements of constructive discharge are demonstrated, "the Court indulges in the legal fiction that the employee's voluntary resignation was, in actuality, involuntary termination of the employee's employment by the employer." *Baker v. Baxa*, 2011 WL 650002 at *1 (D. Colo. Feb. 11, 2011). This

Court has held that "[t]his fiction can satisfy the element of adverse employment action in a substantive claim, *but it does not constitute a claim by itself*." (*Id.* (emphasis added).) The Court analogized the doctrine of constructive discharge to the doctrine of *respondeat superior*, to explain that constructive discharge is not a standalone claim. (*Id.*)

However, the Plaintiffs' allegations of constructive discharge are not completely irrelevant to this case. The Tenth Circuit has held that "in order to establish a prima facie case of disability discrimination under the ADA, a Plaintiff must demonstrate that he [among other elements], suffered discrimination by an employer or prospective employer because of that disability." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011). "In order to demonstrate discrimination, a Plaintiff generally must show that he has suffered an adverse employment action because of that disability." *Id.* Thus, the constructive discharge assertions, although not constituting a separate claim for relief, are nevertheless germane to Plaintiffs' ADA claim, comprising as they do the required adverse action necessary to prevail on such a claim. They are therefore subject to dismissal under Rule 12(b)(6) only insofar as they purport to be independent, actionable and discrete claims.[1]

Defendant's second, alternative argument is that "should the Court determine Plaintiffs' constructive discharge claim is a stand alone cause of action, it must nevertheless be dismissed because it is a tort claim for which there is no exception to

---

[1] The portion of Defendant's recently filed summary judgment motion asserting this same argument (ECF No. 31 at 36–37) is now moot and Plaintiffs need only respond to the remaining arguments.

governmental immunity." (ECF No. 26 at 4.)  Defendant's argument is premised on the notion that constructive discharge is a variant of a wrongful discharge tort claim.  (ECF No. 24 at 5.)  Plaintiffs respond by arguing that constructive discharge is not identical to the tort of wrongful discharge.  (ECF No. 25 at 8.)  However, Plaintiffs fail to argue that constructive discharge cannot sound in tort, or that it is subject to one of the CGIA exceptions.  The Court does not reach this argument because it already concluded that constructive discharge is not a stand alone claim.  However, even if it were to consider this argument, Plaintiffs have conceded it, by failing to argue that the CGIA does not apply.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 24) is GRANTED; and
2. Plaintiffs' Constructive Discharge claims are DISMISSED to the extent that they purport to allege independent claims for relief, separate from their ADA claims.

Dated this 30th day of October, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge

9